## Bradford Novelty Company, Inc. *v.* Technomatic, Inc.

Baldwin, O'Sullivan, Wynne, Daly and Alcorn, Js.

Argued February 2—decided March 1, 1955

*Milton L. Cohn,* with whom was *Israel J. Cohn,* for the appellant (plaintiff).

*Herbert L. Cohen,* for the appellee (defendant).

BALDWIN, J. The plaintiff brought this action to recover the sum of $2100, paid pursuant to a contract to construct a machine. It alleged that the defendant had failed to perform the contract within the time agreed. The defendant denied any breach of the contract and by counterclaim sought damages for the refusal of the plaintiff to accept the machine and pay the balance of the purchase price. The trial court rendered judgment for the defendant on the complaint and the counterclaim, and the plaintiff has appealed.

The finding of facts, which is not subject to cor-

rection, may be summarized as follows: The plaintiff was engaged in the business of manufacturing plastic novelty items. Its process of manufacture required the use of both automatic and hand spraying machines for lacquering. The defendant designed and manufactured special machinery for particular manufacturing requirements. On July 24, 1950, it submitted a proposal to the plaintiff for the construction of an automatic spraying machine. The proposal contained a clause stating that the defendant would not be responsible for delays in performance "due to strikes, accidents, shortages of labor or materials, delays by carriers or other causes beyond [its] control." After a series of modifications of the proposal, the parties entered into a contract on August 17, 1950, calling for the construction and delivery of an automatic machine within three to five months, subject to the clause regarding delays. The defendant encountered various problems, but it completed the designs for the machine by the end of October. Prior to November 7, the defendant brought to the plaintiff's attention an automatic spraying device which utilized a centrifugal system of paint dispersal and which could be adapted to the plaintiff's requirements. Although employment of this device would be a departure from the original proposal, the plaintiff, after a demonstration, agreed to the modification, and the parties, by an exchange of letters on November 7 and 8, changed their original agreement to provide for the use of this type of sprayer. On November 8, the plaintiff paid the defendant $2100 on the purchase price of $5100, as agreed in their contract. Because of difficulties beyond its control, the defendant failed to complete the machine by January 17, 1951, the date originally agreed upon.

In the early spring of 1951, the plaintiff advised the defendant that because of the inferior quality of plastic materials available for use it would be necessary to employ a machine with a rotary spindle instead of the type first contemplated. The defendant agreed to this change on March 28. The alteration presented new technical problems to the defendant and further delayed the project. Since neither party could obtain priorities for the purchase of necessary materials, which were in short supply owing to the Korean War, further delay ensued. Delay also resulted because the defendant could not promptly obtain, for experimentation in developing the machine, the kind of lacquer used by the plaintiff. During the spring of 1951, the plaintiff made inquiries concerning the progress of the work. It was advised by the defendant on May 2, that, barring unforeseen developments, the machine should be completed by the end of the month. An appointment to see the completed machine in operation was made for July 7. On that date, the finished machine was ready for delivery. It conformed to all the specifications of the contract between the parties. The defendant requested that the demonstration fixed for July 7, which fell on Saturday, be postponed until Monday, July 9. The plaintiff expressed its displeasure at the postponement but agreed to come to the defendant's plant on Tuesday, July 10. Instead, on July 9, it posted a registered letter to the defendant rescinding the contract and demanding the immediate return of the $2100 it had paid. The defendant was ready and able to deliver the machine on July 7 and on July 10, and for a reasonable time thereafter. It did not try to sell the machine or determine its market value because it was constructed especially for the plaintiff's needs,

and efforts to sell it would have been futile. It had no pecuniary value to the defendant. On these facts the trial court concluded that the defendant had fulfilled its contract, as modified in November, 1950, and March, 1951, and ordered judgment for the defendant to recover $3000, the unpaid balance of the purchase price.

The time fixed by the parties for performance is, at law, deemed of the essence of the contract. *Janulewycz* v. *Quagliano,* 88 Conn. 60, 63, 89 A. 897. The plaintiff claims that this rule applies especially to mercantile contracts like the present one and that the defendant's failure to perform within the time stated relieved the plaintiff from performance on its part. 3 Corbin, Contracts, § 718; 2 Williston, Sales (Rev. Ed.) §§ 452a, 453. While the rule is generally accepted, it is not decisive of the case at bar. Where the contract calls for the manufacture and sale of an article as yet nonexistent, the time specified for delivery is less likely to be considered of the essence. The reason is that in such a situation there is a probability of delay, and the loss to the manufacturer is likely to be great if the buyer refuses to accept and pay because of noncompliance with strict performance. 3 Corbin, Contracts, § 719. This holds true on the facts here. The parties modified their original agreement on two occasions—in November, 1950, when the use of a centrifugal sprayer was agreed upon, and in March, 1951, at the instance of the plaintiff, when a rotary spindle was adopted because the plaintiff could get nothing but inferior plastics for use in its business. Factors beyond the defendant's control also contributed to the delay. In addition to these salient facts, the conduct of the plaintiff clearly indicated that it acquiesced in the delay and would not require rigid adherence to the dates

specified for the completion of the machine. Its con-
duct justified the defendant's belief that strict per-
formance as to time would not be demanded. It sanc-
tioned the defendant's continued efforts to finish
the machine even though the day stated in the orig-
inal agreement for final performance had long since
passed. The plaintiff, by its conduct, waived its
right to strict compliance with the provisions of the
contract as to time of performance. 3 Corbin, Con-
tracts, § 722; 2 Williston, Sales (Rev. Ed.) § 453f;
3 Williston, Contracts (Rev. Ed.) § 856; *O'Loughlin
v. Poli,* 82 Conn. 427, 436, 74 A. 763; *Bonney* v.
*Blaisdell,* 105 Me. 121, 123, 73 A. 811; *Hugh Paton
& Sons* v. *David Payne & Co.,* 35 Scot. L.R. 112, 114.

The provision of the contract stipulating the time
for performance having been waived, the plaintiff
could not thereafter take advantage of it so long as
the defendant was making reasonable efforts to per-
form within a reasonable time. *O'Loughlin* v. *Poli,*
supra; *Bonney* v. *Blaisdell,* supra, 124; *Petway* v.
*Loew's Nashville & Knoxville Corporation,* 22 Tenn.
App. 59, 68, 117 S.W.2d 975. The plaintiff, however,
contends that the defendant, even if it was obligated
only to perform within a reasonable time, failed to
do so. Under the circumstances of this case, what
was a reasonable time was a question of fact. *Roch-
ester Distilling Co.* v. *Geloso,* 92 Conn. 43, 45, 101
A. 500; *Galasso* v. *Cowles,* 137 Conn. 111, 112, 75
A.2d 46. In the absence of a finding in the plaintiff's
favor on this point, or of any attempt to correct the
finding to include it, the claim is futile.

The plaintiff argues that it was not bound by any
extension of time beyond July 7, 1951, the date set
for a demonstration. The court has found that the
defendant was ready and able to deliver the machine
on that day and that the plaintiff consented to a

postponement of its demonstration until July 10. But that aside, the plaintiff, having acquiesced in the nonperformance of the contract within the time stipulated, cannot peremptorily rescind the contract. It must first give notice of its intention to do so and allow a reasonable time for performance. *Wooley* v. *Williams,* 105 Conn. 671, 678, 136 A. 583; *Remington Arms U.M.C. Co.* v. *Gaynor Mfg. Co.,* 98 Conn. 721, 731, 120 A. 572; *Grippo* v. *Davis,* 92 Conn. 693, 696, 104 A. 165; *Petway* v. *Loew's Nashville & Knoxville Corporation,* supra; 3 Corbin, Contracts, p. 945; Restatement, 1 Contracts § 311. This it failed to do. The court, having found that the delays in the completion of the machine were due to causes beyond the defendant's control, that, in effect, compliance with the terms of the contract as to time for delivery had been waived and that the defendant had fulfilled its contract, properly rendered judgment for the defendant on the complaint and counterclaim.

The plaintiff claims that the court erred in awarding the defendant the balance of the contract price as damages. Ordinarily, when a buyer refuses to accept and pay for goods, and there is an available market for them, the measure of damages is the difference between the contract price and the market or current price at the time the buyer refused to accept them. General Statutes § 6679; *Continental Copper & Steel Industries, Inc.* v. *Bloom,* 139 Conn. 700, 705, 96 A.2d 758. Where, as the court found in the case at bar, the goods are specially manufactured to meet a particular need of the buyer and there is no market for them, and they have no pecuniary value, the seller can recover the contract price. *Allen* v. *Jarvis,* 20 Conn. 38, 49; *Belisle* v. *Berkshire Ice Co.,* 98 Conn. 689, 700, 120 A. 599; 3 Williston, Sales (Rev. Ed.) § 583.

There is no merit in the plaintiff's claim of error in the admission of testimony, and no discussion of it is needed.

There is no error.

In this opinion the other judges concurred.